**E-filed on 1/9/06**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SYNAPSIS, LLC,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>EVERGREEN DATA SYSTEMS, INC., et al.,<br><br>　　　　　　　Defendants. | Case Number C 05-01524 JF<br><br>ORDER[1] (1) GRANTING IN PART WITHOUT LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS OF EVERGREEN, MCALLISTER, AND DEMARTINI, AND (2) GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS OF IRELAND SAN FILIPPO<br><br>[Docket No. 60, 63] |

**I. BACKGROUND**

On January 10, 2005, Plaintiff Synapsis, LLC ("Synapsis") filed the original complaint in the instant action against Defendants Evergreen Data Systems, Inc. ("Evergreen"), Bruce R. McAllister ("McAllister"), Steven J. DeMartini ("DeMartini"), Ireland San Filippo, LLP ("ISF"), and Does 1 through 10. On July 13, 2005, this Court issued an order granting the motion of Defendants Evergreen, McAllister, and DeMartini to dismiss Synapsis's first five claims with

---

[1] This disposition is not designated for publication and may not be cited.

1  leave to amend ("July 13 order").  The dismissed claims alleged: (1) violation of the Racketeer

2  Influenced and Corrupt Organizations Act ("RICO"), (2) breach of contract, (3) intentional

3  interference with prospective economic advantage, (4) negligent interference with prospective

4  economic advantage, and (5) fraud.

5        On August 10, 2005, Synapsis filed a first amended complaint (FAC), alleging: (1)

6  violations of RICO,[2] (2) breach of contract,[3] (3) intentional interference with prospective

7  economic advantage,[4] (4) negligent interference with prospective economic advantage,[5] (5)

8  fraud,[6] and (6) trade libel and slander.[7]  Defendants Evergreen, McAllister, and DeMartini now

9  move to dismiss the first, third, fourth, and fifth claims, pursuant to Federal Rule of Civil

10  Procedure 12(b)(6).  Defendant ISF moves to dismiss the second claim, which is the only claim

11  alleged against it, pursuant to Federal Rule of Civil Procedure 12(b)(6).

12        Synapsis is an electronic forms and laser printing company.  On September 21, 1992,

13  Synapsis's predecessor, Synapsis Corporation Ltd., entered into a "Sales Agent Agreement" with

14  Evergreen, a business forms distributor.  FAC ¶ 11 and Ex. 1.  The Sales Agent Agreement

15  appointed Evergreen as Synapsis's "non-exclusive selling representative in the Area and

16  exclusive selling representative for parties listed on Schedule B to actively promote and solicit

17  orders for the Manufacturer Products or any components thereof for the term of this Agreement."

18  FAC Ex. 1.  It is signed by Timothy Short ("Short"), the then-president of Evergreen, and

19  William Akel ("Akel"), the president of Synapsis.  FAC Ex. 1.  Synapsis alleges that it "took full

[2] Alleged against all Defendants except ISF.

[3] Alleged against all Defendants except DeMartini.

[4] Alleged against McAllister, DeMartini, and Does 1 through 10.

[5] Alleged against McAllister, DeMartini, and Does 1 through 10.

[6] Alleged against all Defendants except ISF.

[7] Alleged against all Defendants except ISF.

Case No. C 05-01524 JF
ORDER (1) GRANTING IN PART WITHOUT LEAVE TO AMEND AND DENYING IN PART MOTION TO
DISMISS OF EVERGREEN, MCALLISTER, AND DEMARTINI, AND (2) GRANTING WITH LEAVE TO AMEND
MOTION TO DISMISS OF IRELAND SAN FILIPPO
(JFLC1)

1    control of the duties and responsibilities of" the Sales Agent Agreement on or about June 26,

2    1996, as confirmed by a letter dated April 11, 1996. FAC ¶ 11 and Ex. 2. This letter, addressed

3    to Akel from Short, reaffirms that "Evergreen recognizes the intellectual property value of the

4    subject products and written materials and agrees to use them solely within the limitations of the

5    existing marketing agreements between Synapsis and Evergreen." FAC Ex. 2.

6        In 1998, "the ownership of Evergreen changed hands to [McAllister] and [DeMartini]."

7    FAC ¶ 16. Through early 1999, Synapsis and Evergreen "enjoyed a good, working relationship."

8    *Id.* On May 10, 2000, Synapsis, McAllister, and Bruce Evans ("Evans"), an "Evergreen

9    manager," entered into a "Mutual Non-Disclosure Agreement," which imposed certain

10   restrictions on the recipients of "Confidential Information," as defined by the agreement,

11   including that the "Recipient shall not use the Confidential Information for its own use or for any

12   purpose except to evaluate whether it desires to enter into a business transaction with the

13   Disclosing Party, or as necessary to carry out the terms of such business transaction." FAC Ex. 3

14   and ¶ 38.

15       Synapsis alleges that, in late 2002, its "level of business was reduced by more than 60%."

16   FAC ¶ 18. McAllister and DeMartini are alleged to have stated falsely that the causes of this

17   reduction in business were the "bad times in the economy, 'dot-com' firms going out of business

18   and the reluctance of businesses to spend monies on electronic forms." *Id.* However, Synapsis

19   became suspicious that "something was amiss" when it received a phone call in late October

20   2002 on the telephone line dedicated to Synapsis-Evergreen business from a customer for whom

21   Synapsis had not created an order. FAC ¶ 19. Synapsis alleges that McAllister, DeMartini, and

22   Evergreen in fact had "entered into other business relationships" in violation of the Sales Agent

23   Agreement and were "secretly diverting business from [Synapsis] through an in house technical

24   service center." FAC ¶ 18. Synapsis alleges that it gave "valuable and proprietary trade secret

25   information" to Evergreen in reliance on representations by McAllister and DeMartini that the

26   information would be used to further the business relationship between Evergreen and Synapsis,

27   but that instead McAllister and DeMartini "used this information to cease doing business with

28

3

1  SYNAPSIS while stringing SYNAPSIS along falsely telling SYNAPSIS that business was

2  slow." FAC ¶¶ 26, 28.  Synapsis alleges that "EVERGREEN's business was expanding and that

3  EVERGREEN had begun a new relationship with a competitor of SYNAPSIS, using

4  SYNAPSIS' trade secrets and valuable knowledge and training." FAC ¶ 35.  Synapsis alleges

5  that "between one to six million dollars that should have belonged to SYNAPSIS per the terms

6  of the [Sales Agent Agreement] were wrongfully diverted." FAC ¶ 20.

7

8  ## II. LEGAL STANDARD

9      A complaint may be dismissed for failure to state a claim upon which relief can be

10  granted for one of two reasons:  (1) lack of a cognizable legal theory or (2) insufficient facts

11  under a cognizable legal theory.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v.*

12  *Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984).  For purposes of a motion to

13  dismiss, all allegations of material fact in the complaint are taken as true and construed in the

14  light most favorable to the nonmoving party.  *Clegg v. Cult Awareness Network*, 18 F.3d 752,

15  754 (9th Cir. 1994).  Although the Court generally may not consider any material beyond the

16  pleadings when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure

17  12(b)(6), *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997), it may consider documents that

18  are attached to and part of the complaint, *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267

19  (9th Cir. 1987).  A complaint should not be dismissed "unless it appears beyond doubt the

20  plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Clegg*,

21  18 F.3d at 754.  However, the Court "is not required to accept legal conclusions cast in the form

22  of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Id.*

23  at 754-55.  Motions to dismiss generally are viewed with disfavor under this liberal standard and

24  are granted rarely.  *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

25

26

27

28

Case No. C 05-01524 JF
ORDER (1) GRANTING IN PART WITHOUT LEAVE TO AMEND AND DENYING IN PART MOTION TO
DISMISS OF EVERGREEN, MCALLISTER, AND DEMARTINI, AND (2) GRANTING WITH LEAVE TO AMEND
MOTION TO DISMISS OF IRELAND SAN FILIPPO
(JFLC1)

1

# III.  DISCUSSION

2

## A.    Violations of RICO

3      Synapsis alleges that all Defendants except ISF have violated RICO.  In order to maintain

4  a civil RICO action, a plaintiff must allege: (1) the conduct (2) of an enterprise (3) through a

5  pattern (4) of racketeering activity.  18 U.S.C. § 1962(c); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473

6  U.S. 479, 496, 105 S.Ct. 3275, 3285 (1985).  "Racketeering activity" includes any criminal

7  activity indictable under one of several statutes listed in the RICO provisions.  *See* 18 U.S.C. §

8  1961(1).  In order to allege the existence of a "pattern" of racketeering activity, the plaintiff must

9  allege at least two predicate acts, or two instances of such activity.  *Bowen v. Oistead*, 125 F.3d

10  800, 806 (9th Cir. 1997).  Synapsis alleges two types of activity that could be considered

11  predicate acts of racketeering: (1) money laundering and (2) wire and mail fraud.  However, it

12  has alleged neither adequately.

13      Synapsis claims that "Defendants laundered money in violation of 18 U.S.C. § 1956 and

14  other statutes that govern criminal money laundering by taking funds that rightfully belonged to

15  SYNAPSIS, placing them into the banking system and converting them to Defendants' own use

16  for the purpose of putting SYNAPSIS out of business or with reckless disregard as to whether it

17  would put SYNAPSIS out of business."  FAC ¶ 25.  "Laundering of monetary instruments," as

18  defined by 18 U.S.C. § 1956, can take three forms.  The first form of money laundering requires

19  that the person "[knows] that the property involved in a financial transaction represents the

20  proceeds of some form of unlawful activity," which is defined as meaning "that the person knew

21  the property involved in the transaction represented proceeds from some form, though not

22  necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law."

23  18 U.S.C. §§ 1956(a)(1) and (c)(1).  Synapsis does not allege conduct that would constitute a

24  felony.  Rather, it alleges that defendants violated the contract and obtained proceeds from

25  business in violation of the contract; it is not a felony to obtain business in violation of a contract.

26  The second form of money laundering requires that the person transports, transmits or transfers

27  funds "from a place in the United States to or through a place outside the United States or to a

28

5

1    place in the United States from or through a place outside the United States."  18 U.S.C. §

2    1956(a)(2).  Synapsis makes no allegations that Defendants transferred any funds into or out of

3    the United States.  The third form of money laundering involves an underlying "specified

4    unlawful activity," as is defined in 18 U.S.C. § 1956(c)(7).  Synapsis does not allege that

5    Defendants engaged in any of the unlawful activities specified by this statute.

6          Synapsis has not cured the defects in its allegations of wire and mail fraud that were

7    present in its original complaint.  As the Court noted in its July 13 order, Federal Rule of Civil

8    Procedure 9 requires that fraud be pled with particularity, and the Ninth Circuit has applied this

9    requirement in RICO actions alleging mail fraud as the predicate act.  *Lancaster Cmty. Hosp. v.*

10   *Antelope Valley Hosp. Dist.*, 940 F.2d 397 (9th Cir. 1991).  In both its original complaint and its

11   FAC, Synapsis has not alleged, for example, when and where the fraudulent sales occurred, to

12   whom the sales were made, or how each Defendant was involved in the alleged mail fraud.

13         Despite previously having been granted leave to amend to do so, Synapsis has failed to

14   allege a predicate act of racketeering.  Accordingly, the motion of Evergreen, McAllister, and

15   DeMartini to dismiss Synapsis's first claim will be GRANTED without leave to amend.

16   **B.     Breach of contract**

17         Synapsis alleges a claim for breach of contract against all Defendants except DeMartini,

18   claiming that Defendants breached three agreements.  The first is the Sales Agent Agreement,

19   dated September 21, 1992, which is the primary business agreement between Evergreen and

20   Synapsis.  FAC Ex. 1.  The second is the Mutual Non-Disclosure Agreement, dated May 10,

21   2000.  FAC Ex. 3.  The third is the letter to Akel from Short, dated April 11, 1996, reaffirming

22   that "Evergreen recognizes the intellectual property value of the subject products and written

23   materials and agrees to use them solely within the limitations of the existing marketing

24   agreements between Synapsis and evergreen."  FAC Ex. 2.  ISF now moves to dismiss this claim,

25   which is the only claim alleged against it, as to ISF.  Synapsis alleges that although is ISF not a

26   party to any of the aforementioned agreements, it nonetheless is liable for breach of contract on

27   the basis of: (1) ostensible authority, (2) alter ego, and (3) conspiracy.

28

Case No. C 05-01524 JF
ORDER (1) GRANTING IN PART WITHOUT LEAVE TO AMEND AND DENYING IN PART MOTION TO
DISMISS OF EVERGREEN, MCALLISTER, AND DEMARTINI, AND (2) GRANTING WITH LEAVE TO AMEND
MOTION TO DISMISS OF IRELAND SAN FILIPPO
(JFLC1)

1    Synapsis alleges generally that "at all times herein mentioned each of the Defendants was

2    the principal, agent, servant, employee, affiliate, parent, subordinate, co-conspirator, and/or alter

3    ego of each of the other Defendants."  FAC ¶ 9.  Synapsis alleges specifically that, in 1998, when

4    McAllister and DeMartini acquired Evergreen, McAllister and DeMartini "were partners of ISF."

5    FAC ¶ 58.

6            On information and belief, MCALLISTER and DEMARTINI were required to
             share their ownership of EVERGREEN with ISF, and all business revenue
7            generated from EVERGREEN inured to the benefit of ISF and its individual
             partners in their respective ownership percentages.  SYNAPSIS draws this
8            conclusion from ISF's conduct by which ISF permitted MCALLISTER and
             DEMARTINI to use ISF's offices and resources to conduct EVERGREEN
9            business, including holding meetings with SYNAPSIS at ISF's offices, and
             sending communications to SYNAPSIS from ISF's offices.

10

11   *Id.*  Additionally, "[b]eginning in 1999, both MCALLISTER and DEMARTINI orally

12   represented to SYNAPSIS that MCALLISTER and DEMARTINI were partners of ISF and that

13   SYNAPSIS could trust them based upon the integrity of the firm."  *Id.*  More particularly,

14   Synapsis alleges that the following representations were made at a meeting in December, 2001 at

15   the offices of ISF:

16           It was orally represented to SYNAPSIS by MCALLISTER and DEMARTINI that
             MCALLISTER and DEMARTINI were still partners of ISF and that
17           EVERGREEN was part of the ISF operation.  MCALLISTER and DEMARTINI
             told SYNAPSIS that ISF purchased and sold companies as part of its business and
18           that EVERGREEN was one of those companies.  MCALLISTER and
             DEMARTINI said to SYNAPSIS that they were the managing partners of
19           EVERGREEN on behalf of ISF.  Given that ISF allowed the use of their offices to
             MCALLISTER and DEMARTINI to conduct the long meeting concerning
20           EVERGREEN, SYNAPSIS believed their representations.

21   FAC ¶ 41.  However, Synapsis also alleges that facts that are inconsistent with its allegations as

22   to ISF's liability: "in 2002, MCALLISTER and DEMARTINI told Akel that they were 'retiring'

23   from ISF so they could devote their full attention to EVERGREEN.  This was false.  On

24   information and belief, they were fired from ISF for unethical conduct."  FAC ¶ 44.

25           Synapsis alleges that it relied upon the representations made by McAllister and DeMartini

26   in 1998, 1999 and 2000 "that they worked for ISF, a public accounting firm with a solid

27   reputation," in continuing its business relationship with Evergreen after McAllister and

28
                                                      7

1   DeMartini purchased Evergreen.  FAC ¶ 59.  Of the three aforementioned agreements, only one

2   was entered into after McAllister and DeMartini purchased Evergreen: the mutual non-disclosure

3   agreement, dated May 10, 2000.  Synapsis alleges that "[a]t the time that this agreement was

4   executed, MCALLISTER was a partner of ISF and ISF was MCALLISTER's actual or ostensible

5   principal with respect to the agreement."  FAC ¶ 60.

6           In order to recover under a theory of ostensible authority, Synapsis must plead

7   representation by the principal (here, ISF), justifiable reliance on the representation, and a change

8   in position or injury resulting from such reliance.  *See Meyer v. Glenmoor Homes, Inc.*, 54 Cal.

9   Rptr. 786, 800 (Ct. App. 1966); *see also* Cal. Civ. Code § 2334 ("A principal is bound by acts of

10  his agent, under a merely ostensible authority, to those persons only who have in good faith, and

11  without want of ordinary care, incurred a liability or parted with value, upon the faith thereof.").

12  In order to establish ostensible authority, "there must be evidence of conduct by the principal

13  which causes a third party reasonably to believe the agent has authority."  *Lindsay-Field v.*

14  *Friendly*, 43 Cal. Rptr. 2d 71, 74 (Ct. App. 1995).  Specifically, "[o]stensible authority must be

15  based upon *acts or declarations* of the principal."  *South Sacramento Drayage Co. v. Campbell*

16  *Soup Co.*, 220 Cal.App.2d 851, 857 (Ct. App. 1963) (emphasis added).  The only relevant

17  conduct by ISF alleged by Synapsis is that ISF "permitted" McAllister and DeMartini "to use

18  ISF's offices and resources to conduct EVERGREEN business, including holding meetings with

19  SYNAPSIS at ISF's offices, and sending communications to SYNAPSIS from ISF's offices."

20  FAC ¶ 58.  Moreover, Synapsis does not clearly allege having relied on any representations by

21  ISF when it entered into the mutual non-disclosure agreement, the only agreement that was

22  entered into after McAllister and DeMartini purchased Evergreen.  Accordingly, the Court

23  concludes that Synapsis has not adequately alleged ostensible authority.

24          An alter ego claim must allege: (1) "such unity of interest and ownership between the

25  corporation and its equitable owner that the separate personalities of the corporation and the

26  shareholder do not in reality exist" and (2) "an inequitable result if the acts in question are treated

27  as those of the corporation alone."  *Sonora Diamond Corp. v. Superior Court*, 99 Cal. Rptr. 2d

28

Case No. C 05-01524 JF
ORDER (1) GRANTING IN PART WITHOUT LEAVE TO AMEND AND DENYING IN PART MOTION TO
DISMISS OF EVERGREEN, MCALLISTER, AND DEMARTINI, AND (2) GRANTING WITH LEAVE TO AMEND
MOTION TO DISMISS OF IRELAND SAN FILIPPO
(JFLC1)

1  824, 836 (Ct. App. 2000).  ISF argues that Synapsis has not alleged that ISF has an ownership

2  interest in any other Defendant entity.  However, the Court need not reach a conclusion as to the

3  sufficiency of Synapsis's allegations with respect to the first element because it concludes that

4  Synapsis has not alleged any facts with respect to the second element, i.e., that it will suffer an

5  inequitable result if the Court evaluates only the liability of Evergreen and McAllister.

6        Finally, Synapsis argues that it has alleged conspiracy liability against ISF, noting that the

7  doctrine of conspiracy "renders each participant in the wrongful act responsible as a joint

8  *tort-feasor* for all damages ensuing from the wrong, irrespective of whether or not he was a direct

9  actor and regardless of the degree of his activity."  *Mox, Inc., v. Woods*, 202 Cal. 675, 677-78

10  (1927) (emphasis added).  However, ISF cannot be held liable through the doctrine of conspiracy

11  because the underlying claim is in contract, not in tort.

12        Synapsis has failed to allege ostensible authority, alter ego, or conspiracy liability.

13  Accordingly, ISF's motion dismiss Synapsis's second claim will be GRANTED.  Because

14  Synapsis has not had a previous opportunity to amend its complaint as to ISF, leave to amend

15  will be granted.

16  **C.    Intentional and negligent interference with prospective economic advantage**

17        Synapsis next alleges claims for intentional and negligent interference with prospective

18  economic advantage against Defendants McAllister, DeMartini, and Does 1 through 10.  In its

19  July 13 order, the Court dismissed these claims because corporate agents and employees acting

20  for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's

21  contract under the doctrine of interference with prospective economic advantage.  *Shoemaker v.*

22  *Myers*, 801 P.2d 1054, 1068 (Cal. 1990).  Synapsis has not cured this defect in its FAC, despite

23  having had an opportunity to do so.  Accordingly, the motion to dismiss Synapsis's third and

24  fourth claims will be GRANTED without leave to amend.

25  **D.    Fraud**

26        Synapsis asserts a claim for fraud against all Defendants except ISF.  Synapsis alleges

27  that Defendants represented to Synapsis that they would "(i) hold SYNAPSIS' proprietary and

28
Case No. C 05-01524 JF
ORDER (1) GRANTING IN PART WITHOUT LEAVE TO AMEND AND DENYING IN PART MOTION TO
DISMISS OF EVERGREEN, MCALLISTER, AND DEMARTINI, AND (2) GRANTING WITH LEAVE TO AMEND
MOTION TO DISMISS OF IRELAND SAN FILIPPO
(JFLC1)

1  trade secret information in confidence, (ii) use SYNAPSIS' services exclusively for all sales

2  involving Oracle financial software applications and other Specific Installed Customer Bases,

3  and (iii) use SYNAPSIS' services exclusively for all sales within the exclusive parameters of the

4  contract with respect to Software Developers as defined in the contract." FAC ¶ 81.  Synapsis

5  makes several specific allegations that Defendants made allegedly false representations about

6  their business intentions, upon which Synapsis relied in disclosing information and making

7  business decisions.  *See, e.g.*, FAC ¶¶ 26, 28, 33, 35, 36, and 39.

8         Defendants characterize Synapsis's fraud claim as a claim for fraudulent concealment.

9  Synapsis characterizes it as a claim for "participatory fraud and fraudulent concealment."  The

10  Court is unable to locate any California case that defines or refers to "participatory fraud."

11  However, as Defendants did in their previous motion and the Court did in its July 13 order, the

12  Court again infers that Synapsis actually seeks to allege promissory fraud.

13         Under California law, the "elements of fraud, which give rise to the tort action for deceit,

14  are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of

15  falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e)

16  resulting damage."  *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996).  A claim of promissory

17  fraud may lie where the misrepresentation at issue is a false promise: "A promise to do

18  something necessarily implies the intention to perform; hence, where a promise is made without

19  such intention, there is an implied misrepresentation of fact that may be actionable fraud."  *Id*.  A

20  claim of fraud based on concealment requires that "the defendant must have been under a duty to

21  disclose the fact to the plaintiff."  *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 7 Cal. Rptr.

22  2d 859, 864 (Ct. App. 1992).

23         Defendants contend that two elements of fraud are not met.  First, they argue that they

24  were under no duty to disclose facts concerning why sales were increasing or decreasing.

25  However, in a claim for fraud based on concealment, "[e]ven where no duty to disclose would

26  otherwise exist, 'where one does speak he must speak the whole truth to the end that he does not

27  conceal any facts which materially qualify those stated. One who is asked for or volunteers

28
                                            10

1    information must be truthful, and the telling of a half-truth calculated to deceive is fraud.'" *Vega*

2    *v. Jones, Day, Reavis & Pogue*, Cal. Rptr. 3d 26, 33 (Ct. App. 2004) (internal citations omitted).

3    Moreover, a claim for promissory fraud does not require that the defendant have a specific duty

4    to disclose.  Instead, it requires that the defendant have made a promise which the defendant did

5    not intend to keep at the time it was made, which induced the plaintiff to enter into a contract.

6    *Lazar*, 12 Cal.4th at 638.  Synapsis alleges that Defendants made such a false promise.  It alleges

7    that McAllister and DeMartini represented to Synapsis "that the drop in sales was due to the

8    economy and other factors external to Defendants' business operations, and that Defendants were

9    complying with all of their contractual obligations." FAC ¶ 82.  It also claims that these

10   "representations were false and at the time that they were made, each defendant making the

11   representation was aware of their falsity.  The true facts were that Defendants had begun to do

12   business with a competitor of SYNAPSIS in violation of the contractual obligations owed to

13   SYNAPSIS and that Defendants desired to conceal that fact from SYNAPSIS for as long as

14   possible." FAC ¶ 83.

15       Second, Defendants argue that Synapsis has not alleged facts showing detrimental

16   reliance.  Synapsis has, however, made such allegations.  For example, Synapsis alleges that it

17   provided "valuable and proprietary trade secret information to assist EVERGREEN with

18   customer technical support, year 2000 issues, product updates, digital master proof

19   enhancements, pricing reviews on-line, and other information not generally known to the public"

20   to Defendants based on representations by McAllister and DeMartini that this information was

21   "needed to further MCALLISTER's and DEMARTINI's business relationship with SYNAPSIS

22   so they could market and support their businesses in a coordinated manner to the benefit of them

23   all." FAC ¶ 26.  Additionally, Synapsis alleges that at a meeting on January 20, 2000,

24   "SYNAPSIS imparted valuable trade secret information to MCALLISTER, DEMARTINI, and

25   EVERGREEN in reliance upon MCALLISTER's and DEMARTINI's continued stated intentions

26   that they would cause EVERGREEN to honor the contract." FAC ¶ 31.  Synapsis also has cured

27   another pleading defect identified in the July 13 order, that Synapsis had "failed to allege with

28

Case No. C 05-01524 JF
ORDER (1) GRANTING IN PART WITHOUT LEAVE TO AMEND AND DENYING IN PART MOTION TO
DISMISS OF EVERGREEN, MCALLISTER, AND DEMARTINI, AND (2) GRANTING WITH LEAVE TO AMEND
MOTION TO DISMISS OF IRELAND SAN FILIPPO
(JFLC1)

particularity when in the period from 2001 to the present the statements were made, which statements were made in writing and which were made orally, and to whom the statements were made." Order p. 7. Synapsis alleges these facts with particularity in its FAC. *See, e.g.*, ¶¶ 26, 29, 30, 31, 33, 36, 38, 39, and 41.

Accordingly, the motion of Evergreen, McAllister, and DeMartini to dismiss Synapsis's fifth claim will be DENIED.

## IV. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that the motion of Evergreen, McAllister, and DeMartini to dismiss is GRANTED IN PART without leave to amend and DENIED IN PART, as set forth above.

IT IS FURTHER ORDERED that the motion of ISF to dismiss is GRANTED with leave to amend.

DATED: January 9, 2006

/s/ (electronic signature authorized)
JEREMY FOGEL
United States District Judge

Case No. C 05-01524 JF
ORDER (1) GRANTING IN PART WITHOUT LEAVE TO AMEND AND DENYING IN PART MOTION TO
DISMISS OF EVERGREEN, MCALLISTER, AND DEMARTINI, AND (2) GRANTING WITH LEAVE TO AMEND
MOTION TO DISMISS OF IRELAND SAN FILIPPO
(JFLC1)

1  This Order has been served upon the following persons:

2  Patricia L. Bonheyo          pbonheyo@steinlubin.com, bonheyo@yahoo.com

3  Daniel C. DeCarlo            decarlo@lbbslaw.com, kkim@lbbslaw.com; pink@lbbslaw.com;
                                creyes@lbbslaw.com
4
   Manuel Albert Martinez       MMartinez@steinlubin.com, msaephan@steinlubin.com
5
   Michael Navid Radparvar      radparvar@lbbslaw.com,
6
   Jeffrey F. Sax               jsax@sswesq.com
7
   Shawn A. Toliver             toliver@lbbslaw.com, nebreda@lbbslaw.com
8

9  H Joseph Nourmand
   H Joseph Nourmand Law Offices
10 660 S. Figueroa Street
   24th Floor
11 Los Angeles, CA 90017

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
   Case No. C 05-01524 JF
   ORDER (1) GRANTING IN PART WITHOUT LEAVE TO AMEND AND DENYING IN PART MOTION TO
   DISMISS OF EVERGREEN, MCALLISTER, AND DEMARTINI, AND (2) GRANTING WITH LEAVE TO AMEND
   MOTION TO DISMISS OF IRELAND SAN FILIPPO
   (JFLC1)