1

2                                                              **E-Filed 3/9/07**

3

4

5

6

7

8                                  NOT FOR CITATION

9                  **IN THE UNITED STATES DISTRICT COURT**

10                 **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11                              **SAN JOSE DIVISION**

12

13    SYNAPSIS, LLC,                          Case Number C 05-01524 JF

14                        Plaintiff,          ORDER[1] (1) GRANTING IN PART
                                              AND DENYING IN PART
      v.                                      DEFENDANTS' MOTION FOR
15                                            SUMMARY JUDGMENT; (2)
      EVERGREEN DATA SYSTEMS, INC., et al.,   DENYING SYNAPSIS'S MOTION
16                                            FOR SUMMARY JUDGMENT AS IT
                        Defendants.           PERTAINS TO THE SECOND
17                                            AMENDED COMPLAINT; AND (3)
                                              GRANTING IN PART AND
18                                            DENYING IN PART SYNAPSIS'S
                                              MOTION FOR SUMMARY
19                                            JUDGMENT AS IT PERTAINS TO
                                              THE COUNTERCLAIMS
20
                                              [re. Docket Nos. 207, 209]
21

22

23        Defendants Evergreen Data Systems, Inc. ("Evergreen"), Bruce R. McAllister

24    ("McAllister"), and Steven J. DeMartini ("DeMartini") (collectively "Defendants"), and Plaintiff

25    Synapsis, LLC ("Synapsis") bring cross motions for summary judgment.  For the reasons set

26    _____

27        [1] This disposition is not designated for publication and may not be cited.

28    Case No. C 05-01524 JF (RS)
      ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
      JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
      SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
      MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
      (JFLC1)

1  forth below, the Court will (1) grant in part and deny in part Defendants' motion; (2) deny

2  Synapsis' motion as it pertains to the second amended complaint ("SAC"); and (3) grant in part

3  and deny in part Synapsis' motion as it pertains to the counterclaims.

## I. BACKGROUND

4

5  **1.    Procedural Background**

6         On January 10, 2005, Synapsis filed the original complaint in the instant action against

7  Evergreen, McAllister, DeMartini, Ireland San Filippo LLP ("ISF"), and Does 1 through 10.  On

8  July 13, 2005, this Court issued an order granting the motion of Evergreen, McAllister, and

9  DeMartini to dismiss Synapsis's first five claims, with leave to amend.  The dismissed claims

10  alleged: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2)

11  breach of contract; (3) intentional interference with prospective economic advantage; (4)

12  negligent interference with prospective economic advantage; and (5) fraud.

13         On August 10, 2005, Synapsis filed a first amended complaint, alleging: (1) violations of

14  RICO; (2) breach of contract; (3) intentional interference with prospective economic advantage;

15  (4) negligent interference with prospective economic advantage; (5) fraud; and (6) trade libel and

16  slander.  Evergreen, McAllister, and DeMartini moved to dismiss the first, third, fourth, and fifth

17  claims.  ISF moved to dismiss the second claim, the only claim alleged against it.  On January 9,

18  2006, this Court issued an order granting ISF's motion to dismiss, again with leave to amend.

19  This order also denied in part and granted in part, without leave to amend, the motion to dismiss

20  of Evergreen, McAllister, and DeMartini.

21         On March 8, 2006, Synapsis filed a second amended complaint ("SAC") alleging (1)

22  breach of contract; (2) fraud; (3) trade libel and slander; and (4) conversion.  On March 28, 2006,

23  Evergreen, McAllister, and DeMartini filed an answer to the SAC and asserted counterclaims

24  against Synapsis and William Akel ("Akel"), the former President of Synapsis, for: (1) breach of

25  contract; (2) breach of the covenant of good faith and fair dealing; (3) intentional interference

26  with existing contractual relationships; (4) intentional interference with prospective economic

27

28

Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

1  relationships; (5) negligent interference with prospective economic relations; (6) inducing breach

2  of contract; and (7) unfair business practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et*

3  *seq*.  ISF answered the SAC on April 7, 2006 and moved for summary judgment on August 4,

4  2006.[2]   The Court granted this motion on September 12, 2006.

5  On January 16, 2007, at the request of Evergreen, McAllister, and DeMartini, the Court

6  dismissed the counterclaims against Akel with prejudice.  On January 12, 2007, Evergreen,

7  McAllister, and DeMartini moved for summary judgment as to Synapsis's remaining claims, and

8  Synapsis moved for partial summary judgment.  The Court heard oral argument on February 16,

9  2007.

10  **2.   Factual Background**

11  Synapsis alleges the following:  Synapsis is an electronic forms and laser printing

12  company.  On September 21, 1992, Synapsis's predecessor, Synapsis Corporation Ltd., entered

13  into a "Sales Agent Agreement" ("SAA") with Evergreen, a business forms distributor.  SAC ¶

14  11 and Ex. 1.  The SAA appointed Evergreen as Synapsis's "non-exclusive selling representative

15  in the Area and exclusive selling representative for parties listed on Schedule B to actively

16  promote and solicit orders for the Manufacturer Products or any components thereof for the term

17  of this Agreement."  SAC Ex. 1.  The SAA is signed by Timothy Short ("Short"), the then-

18  President of Evergreen, and Akel.  SAC Ex. 1.  Synapsis alleges that it "took full control of the

19  duties and responsibilities of" the SAA on or about June 26, 1996, as confirmed by a letter dated

20  April 11, 1996.  SAC ¶ 11 and Ex. 2.  This letter, addressed to Akel from Short, states that

21  "Evergreen recognizes the intellectual property value of the subject products and written

22  materials and agrees to use them solely within the limitations of the existing marketing

23  agreements between Synapsis and Evergreen."  SAC Ex. 2.

24  In 1998, "the ownership of EVERGREEN changed hands to MCALLISTER and

25

26  [2]  ISF filed an amended motion for summary judgment on this date after filing its first

27  motion for summary judgment on May 18, 2006.

28
Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

1  DEMARTINI." SAC ¶ 16.  Through early 1999, Synapsis and Evergreen "enjoyed a good,

2  working relationship." *Id.*  On May 10, 2000, Synapsis, McAllister, and Bruce Evans, an

3  "Evergreen manager," entered into a "Mutual Non-Disclosure Agreement" ("NDA"), that

4  imposed certain restrictions on the recipients of "Confidential Information," including that the

5  "[r]ecipient shall not use the Confidential Information for its own use or for any purpose except

6  to evaluate whether it desires to enter into a business transaction with the Disclosing Party, or as

7  necessary to carry out the terms of such business transaction."  SAC ¶ 38 and Ex. 3.

8      Synapsis alleges that, in late 2002, its "level of business was reduced by more than 60%."

9  SAC ¶ 19.  McAllister and DeMartini allegedly stated that the causes of this reduction in

10  business were the "bad times in the economy, 'dot-com' firms going out of business and the

11  reluctance of businesses to spend monies on electronic forms." *Id.*  However, Synapsis became

12  suspicious that "something was amiss" when it received a phone call in late October 2002 on the

13  telephone line dedicated to Synapsis-Evergreen business from a customer for whom Synapsis had

14  not created an order.  SAC ¶ 20.  Synapsis alleges that McAllister, DeMartini, and Evergreen in

15  fact had "entered into other business relationships" in violation of the SAA and were "secretly

16  diverting business from [Synapsis] through an in house technical service center."  SAC ¶ 19.

17  Synapsis alleges that it gave "valuable and proprietary trade secret information" to Evergreen in

18  reliance on representations by McAllister and DeMartini that the information would be used to

19  further the business relationship between Evergreen and Synapsis, but that McAllister and

20  DeMartini "used this information to cease doing business with SYNAPSIS while stringing

21  SYNAPSIS along falsely telling SYNAPSIS that business was slow."  SAC ¶¶ 28, 30.  Synapsis

22  alleges that "EVERGREEN's business was expanding and that EVERGREEN had begun a new

23  relationship with a competitor of SYNAPSIS, using SYNAPSIS' trade secrets and valuable

24  knowledge and training."  SAC ¶ 35.  Synapsis alleges that "between one to six million dollars

25  that should have belonged to SYNAPSIS per the terms of the [Sales Agent Agreement] were

26  wrongfully diverted."  SAC ¶ 21.

27

28

Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

1    Defendants deny many of the factual allegations contained in the SAC and assert

2 numerous affirmative defenses.  Defendants allege the following in their counterclaim: Evergreen

3 believes that "the products offered by Synapsis, while functional, simply did not offer customers

4 everything they demanded and needed."  Counterclaim ¶ 13.  As a consequence of the

5 inadequacy of Synapsis's products, "Evergreen was forced to seek out products that would satisfy

6 their customers' needs with regard to form software.  This evolution in the marketplace also

7 resulted in Evergreen developing more enhanced in-house technical capabilities to deal with the

8 more complex and evolving products offered by vendors other than Synapsis."  Counterclaim ¶

9 15.  "On or about October 25, 2004, [Synapsis and Akel] began attempting to solicit business

10 from Evergreen's customers.  Some of those solicitations resulted in a loss of customers to

11 Evergreen, and a resulting loss of income."  Counterclaim ¶ 19.  "[W]ithout complying with the

12 terms of the [SAA], [Synapsis and Akel] unilaterally terminated the [SAA] and refused to honor

13 Evergreen's request for product."  Counterclaim ¶ 22.  "Evergreen sought to obtain from

14 Synapsis the latter's return of all Evergreen customer data which Synapsis had utilized in

15 connection with the parties' earlier dealings under the [SAA].  Synapsis refused to provide such

16 customer information despite the fact that such data is crucial to Evergreen's ability to provide

17 technical support to those customers."  Counterclaim ¶ 23.

18                                  **II. LEGAL STANDARD**

19    A motion for summary judgment should be granted if there is no genuine issue of

20 material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

21 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears

22 the initial burden of informing the Court of the basis for the motion and identifying the portions

23 of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that

24 demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

25 317, 323 (1986).

26    If the moving party meets this initial burden, the burden shifts to the non-moving party to

27

28

5

Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

1   present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

2   *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents

3   evidence from which a reasonable jury, viewing the evidence in the light most favorable to that

4   party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49;

5   *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

6        "When the nonmoving party has the burden of proof at trial, the moving party need only

7   point out 'that there is an absence of evidence to support the nonmoving party's case.'"

8   *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

9   Once the moving party meets this burden, the nonmoving party may not rest upon mere

10  allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine

11  issue for trial.  *Id*.

12                              **III. DISCUSSION**

13  **1.      Defendants' Motion for Summary Judgment**

14        Defendants move for summary judgment on each of the four claims of the SAC.

15  Synapsis opposes each aspect of the motion.

16        a.      <u>First Claim:  Breach of Contract</u>

17        Defendants move for summary judgment on the breach of contract claim as it pertains to

18  the alleged breach of the SAA and the NDA.

19              i.      Breach of the SAA

20        Synapsis alleges that Defendants breached the SAA by (1) violating an exclusivity

21  provision, *see* SAC ¶ 60; (2) failing to discuss and resolve differences and to use best efforts to

22  market Synapsis's products, *see* SAC ¶ 61; and (3) violating the license, confidentiality, and

23  commissions provisions of the SAA, *see* SAC ¶ 62, 66.  For the reasons discussed below, the

24  Court will grant Defendants' motion only as to the first alleged breach.

25                  (1)      Alleged Violation of an Exclusivity Provision in the SAA

26                          (a)      Statute of Limitations

27

28
Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

1    Defendants argue that Synapsis's claims under the SAA are barred by the applicable

2    statute of limitations.  The limitations period for breach of a written contract is four years.  Cal.

3    Civ. Code § 337.  "[T]he statute of limitations begins to run when the plaintiff suspects or should

4    suspect that her injury was caused by wrongdoing, that someone has done something wrong to

5    her."  *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110 (Cal. 1988).  "It has long been established

6    that the defendant's fraud in concealing a cause of action against him tolls the applicable statute

7    of limitations, but only for that period during which the claim is undiscovered by plaintiff or until

8    such time as plaintiff, by the exercise of reasonable diligence, should have discovered it."

9    *Bernson v. Browning-Ferris Industries*, 7 Cal. 4th 926, 931 (Cal. 1994).  Defendants contend that

10   Akel was or should have been aware in 2000 of Evergreen's relationship with Formscape, one of

11   Synapsis's competitors, and that a breach of contract action based on this relationship is barred.

12   Synapsis brought the instant action on January 10, 2005.  There is a factual dispute

13   regarding the date upon which Synapsis had notice or should have been on notice of the alleged

14   breaches of the SAA.  Synapsis contends that it delayed suit because Defendants misled it into

15   believing that no breach of the SAA had occurred.  *See* Opposition to Defendants' Motion 19.

16   Defendants present evidence tending to prove that Akel should have had or did have notice of the

17   alleged breach, but that remains an issue of fact.  The Court thus cannot determine as a matter of

18   law that the statute of limitations bars the breach of contract claim.

19                    (b)    Waiver and Estoppel

20   Defendants next contend that Synapsis's breach of contract claim is barred by the

21   doctrines of waiver and estoppel.  Defendants assert that Synapsis continued to treat the contracts

22   at issue in this case as viable despite an apparent breach.  *See Letter v. Eltinge*, 54 Cal. Rptr. 703,

23   710-11 (1966) (discussing waiver doctrine); *Trustees of the California State University v.*

24   *National Collegiate Athletic Association*, 147 Cal. Rptr. 187, 193 (1978) (discussing estoppel

25   doctrine).  Synapsis argues that Defendants have not met their burden of proving estoppel and

26   waiver, that Synapsis merely complied with the terms of the SAA, that Synapsis did not know of

27

28
Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

1    the breach because of Defendants' false statements, and because Defendants do not have clean

2    hands. *See e.g. Ellenburg v. Brockway, Inc.*, 763 F.2d 1091 (9th Cir. 1984) (discussing doctrine

3    of unclean hands).

4         Having reviewed the evidence, the Court concludes that factual issues remain as to

5    Synapsis's knowledge of the alleged breaches of contract, its actions in response to its discovery

6    of the alleged breaches of contract, and Defendants' roles in concealing the breaches of contract

7    from Synapsis.  The Court cannot resolve these issues of fact in deciding the instant motion.

8                              (c)      The Alleged Exclusivity Provision in the SAA

9         Synapsis alleges that Defendants breached the exclusivity provision of the SAA by selling

10   LaserForms products through another manufacturer and by expanding its technical service center.

11   *See* FAC ¶ 60.  Defendants move for summary judgment on the basis that the SAA does not

12   include such an exclusivity provision.

13        "A contract must be so interpreted as to give effect to the mutual intention of the parties

14   as it existed at the time of contracting, so far as the same is ascertainable and lawful."  Cal. Civ.

15   Code § 1636.  "The language of a contract is to govern its interpretation, if the language is clear

16   and explicit, and does not involve an absurdity."  Cal. Civ. Code § 1638.  "When a contract is

17   reduced to writing, the intention of the parties is to be ascertained from the writing alone, if

18   possible . . . ."  Cal. Civ. Code § 1639.  "Where the meaning of the words used in a contract is

19   disputed, the trial court must provisionally receive any proffered extrinsic evidence which is

20   relevant to show whether the contract is reasonably susceptible of a particular meaning."  *Morey

21   v. Vannucci*, 64 Cal.App.4th 904, 912 (Cal. Ct. App. 1998).  "California recognizes the objective

22   theory of contracts, under which [i]t is the objective intent, as evidenced by the words of the

23   contract, rather than the subjective intent of one of the parties, that controls interpretation.  The

24   parties' undisclosed intent or understanding is irrelevant to contract interpretation."  *Founding

25   Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109

26   Cal.App.4th 944, 956 (Cal. Ct. App. 2003) (internal citations and quotation marks omitted).

27

28
                                         8

Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

1    The section of the SAA most relevant to the disputed issue of exclusivity is the paragraph

2    entitled "Appointment as Sales Agent."  It reads:

3        Manufacturer [Synapsis] hereby designates and appoints Agent [Evergreen] as its
         non-exclusive selling representative in the Area and exclusive selling
4        representative for parties listed on Schedule B to actively promote and solicit
         orders for the Manufacturer Products or any components thereof for the term of
5        this Agreement.  Manufacturer may designate and appoint other selling
         representatives in the non-exclusive Area, including its own direct sales force, as
6        it deems advisable in its sole discretion.  Manufacturer will not, however, attempt
         to appoint another third-party or interfere with existing relationships which have
7        consummated between Manufacturer and Agent.

8    SAA ¶ 3.  Schedule B does not identify specific parties, but instead defines "Overall Territory" as

9    "[a]ny and all areas of the world where Agent's software developers have customers," and

10   "Specific Installed Customer Bases" as "**Software Developers**, as defined as []a company which

11   creates or exclusively represents programs contained on user loadable media (floppy disk or

12   stored set of instructions) which govern the system operation to meet specific user needs and

13   make the hardware run."  SAA Schedule B.

14       The Court concludes as a matter of law that SAA ¶ 3 does not impose an exclusivity

15   obligation on Evergreen.  The language is not ambiguous, nor is it susceptible to an interpretation

16   requiring Evergreen to sell only Synapsis products.  By its express terms, SAA ¶ 3 imposes an

17   exclusivity obligation on *Synapsis*, not on Evergreen.  The last sentence of the paragraph

18   prohibits *Synapsis* from appointing another third-party, but no comparable sentence prohibits

19   *Evergreen* from selling these products of one of Synapsis's competitors.  Nor does Schedule B

20   provide support for an argument that the exclusivity contemplated by the SAA was intended to

21   benefit Synapsis.  The absence of named parties does not, as Synapsis suggests, render the terms

22   of the SAA vague as they pertain to exclusivity; at most, it indicates that *Evergreen* may not have

23   been granted meaningful exclusivity.

24       Nor do other clauses of the SAA impose an exclusivity obligation on Evergreen.  The

25   'best efforts' clause, SAA ¶ 5.1(a) ("Agent shall use its best efforts to market and promote the

26

27
                                                 9
28   Case No. C 05-01524 JF (RS)
     ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
     SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
     MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
     (JFLC1)

1  sale of the Manufacturer Products throughout the Area."), does not require exclusivity.[3]  The

2  listed obligations of Synapsis in SAA ¶ 5.2(d) affirm *Synapsis's* duty to "protect Agent's

3  exclusive rights to supply products to accounts identified on Schedule B," but the SAA imposes

4  no parallel duty on Evergreen.[4]  The fact that the agreement imposes limits on Evergreen's use of

5  Synapsis's trademarks and trade names does not establish exclusivity.  *See* SAA ¶ 9.2 ("Agent

6  agrees that is shall not use, make reference to or otherwise designate Manufacturer's trademarks

7  or trade names except as they may be used for the benefit of Manufacturer . . . .  Manufacturer

8  agrees to allow Agent the right to use its trademark 'LaserForms' for SNAP Retrofit™ electronic

9  forms provided Manufacturer is given credit for production.").

10         The extrinsic evidence proffered by Synapsis does not show that the SAA is reasonably

11  susceptible to Synapsis's proposed interpretation.  The letter sent by Short to Akel on April 11,

12  1996, *see* Synapsis Motion Ex. 2, does not pertain to exclusivity, but rather to Evergreen's

13  acknowledgment of Synapsis's intellectual property rights in the Evergreen and LaserForms

14  logos.  This is made clear in the request sent by Akel on April 10, 1996: "This authorization

15  simply states that Evergreen will recognize the intellectual property value of all items by

16  Synapsis being used, and the used [sic] of any of these materials will be used in conjunction with

17  the agreement in force for doing business."  *Id.*  The parties may have decided that it was in their

18  business interests to deal with each other exclusively for a period of time, but Synapsis has

19  provided the Court with no evidence indicating that Evergreen understood or believed that it was

20

21

22         [3]  To the extent that Synapsis argues that a 'best efforts' clause implies an exclusivity
    clause because a 'best efforts' clause has little weight without one, its argument is not supported
23  by the case law.  As Evergreen noted at oral argument, an exclusivity clause may give rise to an
    implied 'best efforts' clause, *see e.g. Bloor v. Falstaff Brewing Corp.*, 601 F.2d 609 (2d Cir.
24  1979), but Synapsis has provided the Court with no authority suggesting that the converse is true.

25         [4]  Synapsis describes SAA ¶ 5.1(a) and SAA ¶ 5.2(d) as having "parallel language."
    Opposition to Defendants' Motion 9.  That is not correct.  The difference between a "best
26  efforts" clause and a clause that imposes a duty to "protect Agent's exclusive rights" is not
27  insignificant, as Synapsis suggests.

10

Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

28

1   contractually bound to do so.  Neither the absence of sales of products by Synapsis's competitors

2   nor internal emails are sufficient to cast doubt on the clear language of the SAA.

3            The Court concludes that the language of the SAA is unambiguous in its lack of a

4   requirement that Evergreen sell Synapsis's products exclusively.  The extrinsic evidence does not

5   suggest any latent ambiguity and does not show that the SAA is reasonably susceptible to the

6   interpretation asserted by Synapsis.  Accordingly, the Court will grant Defendants' motion for

7   summary judgment on the breach of contract claim to the extent that it is based upon Evergreen's

8   alleged breach of an exclusivity clause in the SAA.

9                            (2)      Alleged Failure to Discuss and Resolve Differences and to Use

10                                    Best Efforts to Market Synapsis's Products, and Violation of the

11                                    License, Confidentiality, and Commissions Provisions of the SAA

12           Synapsis alleges that Evergreen failed "in good faith, to 'discuss and resolve any issues

13  that arise', to 'actively promote and solicit orders for SYNAPSIS' products', and to 'use best

14  efforts to market and promote the sale of SYNAPSIS' products throughout EVERGREEN's

15  territory;'" SAC ¶ 61; that "Evergreen breached the express terms of the [SAA], specifically

16  sections 6.5.c, General License Provisions, 6.6. Confidentiality, and 8.1 Commissions (as orally

17  agreed and implemented by the parties as alleged above), with the intent to cause immediate and

18  irreparable harm to SYNAPSIS;"  SAC ¶ 62; and that "Defendants also breached the [SAA] by

19  failing to pay sums to SYNAPSIS due on account of services rendered by SYNAPSIS and

20  received and in use by Oracle customers."  SAC ¶ 66.  Defendants do not move for summary

21  judgment on the allegations contained in these paragraphs beyond their general argument that the

22  statute of limitations and the doctrines of waiver and estoppel bar these claims.[5]  As discussed

23

24            [5] Defendants assert that "Evergreen is alleged to have breached the Sales Agreement by
25  selling non-Synapsis products in violation of a purported exclusivity obligation," Defendants
    Motion 4, and do not discuss the alleged breach of the contract through failure to discuss and
26  resolve differences and to use best efforts to market Synapsis's products except in the context of
27  arguing that the "best efforts" clause is not equivalent to an exclusivity clause.  *See id.* at 11-12.

                                                   11

28  Case No. C 05-01524 JF (RS)
    ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
    JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
    SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
    MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
    (JFLC1)

1    above, factual issues regarding those asserted bars preclude summary judgment.

2              ii.     Breach of the NDA

3          Defendants assert two bases for summary judgment on the breach of contract claim as it

4    pertains to the NDA.  Synapsis responds to one argument and asserts further bases for denying

5    the motion.  For the reasons discussed below, the Court concludes that Defendants are entitled to

6    summary judgment on Synapsis's breach of contract claim based on the NDA.

7              (1)     Defendants' Asserted Bases for Summary Judgment

8          Defendants move for summary judgment on the breach of contract claim to the extent that

9    it is based on any alleged breach of the NDA.  Defendants contend that Evergreen was not a party

10   to the NDA and that Synapsis is judicially estopped from claiming otherwise, and that Synapsis

11   cannot establish that McAllister breached the NDA by disclosing any confidential information or

12   that it suffered damage from that disclosure.

13             (a)     Evergreen and the NDA

14         Synapsis alleges that it and McAllister entered into the NDA on May 10, 2000, and that

15   "[i]n that agreement, MCALLISTER agreed to hold SYNAPSIS' information as confidential and

16   proprietary.  The agreement also contained an attorneys' fees clause.  At the time that this

17   agreement was executed, MCALLISTER was a partner of ISF and ISF was MCALLISTER's

18   actual or ostensible principal with respect to the agreement."  SAC ¶ 59.  Evergreen moves for

19   summary judgment, claiming that Synapsis is judicially estopped from arguing that Evergreen

20   was a party to the contract.  However, Synapsis has only argued that Evergreen did not sign the

21   NDA, not that it is not a party to it.[6]  Its allegation that McAllister was an agent for ISF when

22   signing the NDA does not preclude Synapsis from arguing that McAllister also was an agent for

23

24   ─────────────────────
        [6] Defendants place great weight on Synapsis's statement in opposition to ISF's motion
25   for attorneys' fees that "[a]lso important is that the Non-Disclosure Agreement was not signed by
     Evergreen, but by McAllister and John Evans.  Comparing it to the SAA, which was signed by
26   Evergreen only, it markedly shows the difference."  Opposition to ISF Motion for Attorneys'
     Fees 11.  The Court concludes that this statement is an insufficient basis for judicial estoppel.
27

28   ─────────────────────
     Case No. C 05-01524 JF (RS)
     ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
     SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
     MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
     (JFLC1)

1    Evergreen.

2          Synapsis provides evidence that Evergreen was a party to the NDA in the form of Akel's

3    declaration that he met with McAllister and Evans at his home and discussed business between

4    Evergreen and Synapsis.  Akel Decl. ¶ 46-50(a).[7]  This evidence raises a reasonable inference

5    that McAllister signed the NDA on behalf of Evergreen.

6                              (b)      Evidence that McAllister Breached the NDA by Revealing

7                                       Information About the "EDGE" Product and Resulting

8                                       Damages

9          Defendants argue that Synapsis has produced no evidence indicating that McAllister

10   breached the NDA by revealing confidential information regarding Synapsis's "EDGE" product

11   or that Synapsis suffered any damages from such a disclosure.  Indeed, Synapsis's opposition to

12   the motion identifies no evidence of such a disclosure, and it appears that Synapsis has

13   abandoned this theory.  Accordingly, the Court will grant summary judgment to Defendants as to

14   any alleged breach of the NDA involving disclosure of confidential information about the

15   "EDGE" product to Oracle.

16                              (2)      Other Breaches of the NDA Asserted by Synapsis in Opposition to

17                                       Defendants' Motion

18         Based upon their moving papers, Defendants appear to understand Synapsis's claim for

19   breach of the NDA as pertaining solely to the EDGE product discussed at the meeting on May

20   10, 2000.  Synapsis, however, opposes the motion by asserting two alternative theories of breach

21   of the NDA.  As discussed below, the Court concludes that neither theory is sufficient to

22   withstand summary judgment.

23         First, Synapsis asserts that Defendants reverse-engineered the Docuguard product through

24

25

26         [7]  The Akel Declaration is subject to multiple objections by Defendants.  However, the
     objections to these paragraphs are limited and, even if granted, would not change the Court's
27   analysis.

28
                                              13
     Case No. C 05-01524 JF (RS)
     ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
     SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
     MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
     (JFLC1)

1    their technical service center.  *See* SAC ¶ 63 ("Defendants have breached the confidentiality

2    provisions of [the NDA] by unlawfully appropriating SYNAPSIS' Work, trade secrets, and

3    proprietary and confidential information to compete against SYNAPSIS through the internal

4    technical center.").  Defendants asserted at oral argument that they could not have reverse-

5    engineered the Docuguard product as a result of confidential information covered by the NDA

6    because the undisputed evidence shows that they had engineered the product by May 12, 2000,

7    only two days after the NDA was signed.  *See e.g.* Synapsis Motion 17 (stating this date).  This

8    argument is well-taken.  Based on the evidence in the record, no reasonable trier of fact could

9    find that such a complicated undertaking could have been completed in two days.  Even if the

10   NDA might have prohibited Defendants from reverse-engineering the Docuguard product going

11   forward, that is not what occurred.  Synapsis's breach of contract claim may not proceed on this

12   basis.[8]

13        Second, Synapsis asserts that Defendants solicited a skilled Synapsis technical employee,

14   Wayne Patterson ("Patterson"), within the two year period covered by the NDA.[9]  The evidence

15

16        [8]  Synapsis submits declarations of four former Evergreen employees.  *See* Decls. of
     Christine Gabriele, Andee Chin Loudermilk, Irma LeGrande, and Brian Falor.  These
17   declarations refer to an alleged effort by Evergreen to increase its revenue by replacing Synapsis
     in the LaserForms product area and by capturing maintenance contracts that had previously been
18   serviced by Synapsis.  It is not clear from the papers filed by Synapsis that these allegations
     pertain to the alleged breach of the NDA.  These allegations do not support Synapsis's apparent
19   original theory that McAllister breached the NDA by revealing information about the EDGE
     product to Oracle or the apparent new theories that Defendants reverse-engineered the
20   Docuguard product or solicited Patterson's employment.  Given their unclear relationship to any
     of these theories, these declarations are insufficient to create a material issue of triable fact that
21   would allow Synapsis to withstand summary judgment on a claim for breach of the NDA.  The
     Court reaches this conclusion without expressing any opinion as to whether these declarations
22   provide evidence of Synapsis's alleged violation of the best efforts, confidentiality, or licensing
     provisions of the SAA.
23

24

25        [9]  "Without the prior written consent of the Disclosing Party, the Recipient and its
     representatives will not, for a period of two years after the date of this agreement, solicit or cause
26   to be solicited the employment of any person who is now employed by the Disclosing Party."
     NDA ¶ 4(a).
27
                                                    14
28   Case No. C 05-01524 JF (RS)
     ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
     SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
     MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
     (JFLC1)

1    submitted by Synapsis tends to prove that John Evans, an Evergreen employee, sent an email to

2    DeMartini and McAllister about his "[n]eed to discuss the hiring of Wayne Patterson as well as

3    new developments at Synapsis," Synapsis Motion Ex. 34, and that Patterson became "part of

4    Evergreen," Synapsis Motion Ex. 50.  However, the SAC does not include an allegation

5    regarding Patterson's employment.  If Synapsis acquired this information during discovery, it

6    should have moved to amend its complaint.  Moreover, Synapsis does not point to evidence that

7    Patterson was in its employ at the time that the NDA was signed, that Defendants' actions

8    amounted to a solicitation of Patterson's employment, or that it suffered any damages from

9    Patterson's asserted employment by Evergreen.  Accordingly, the Court concludes that Synapsis

10   may not proceed on its breach of contract claim on this unpled theory.

11            b.    Second Claim:  Fraud

12        Synapsis alleges that Defendants made a series of false statements that they would

13        (i) hold SYNAPSIS' proprietary and trade secret information in confidence, (ii)
          use SYNAPSIS' services exclusively for all sales involving Oracle financial
14        software applications and other Specific Installed Customer Bases, and (iii) use
          SYNAPSIS' services exclusively for all sales falling within the exclusive
15        parameters of the contract with respect to Software Developers as defined in the
          contract.

16

17   SAC ¶ 70.  Synapsis also alleges that

18        from in or about 2001 to the present, Defendants MCALLISTER and
          DEMARTINI orally and in writing represented and warranted to SYNAPSIS and
19        SYNAPSIS' Managing Member, Akel, that the drop in sales was due to 9-11, the
          economy and other factors external to Defendants' business operations, and that
20        Defendants were complying with all of their contractual obligations.

21   SAC ¶ 71.  Defendants move for summary judgment on the second claim on the basis that

22   Synapsis cannot prevail on either a fraud by deceit or a promissory fraud theory.  Synapsis does

23   not identify in its opposition the theory upon which it proceeds,[10] but argues that the alleged

24

25

26        [10]  Synapsis entitles its discussion "Fraud is Available to Synapsis Based on Evidence of
     Evergreen's Breach of Contract."  However, the evidence it provides suggests a theory of fraud
27   in the performance of a contract, which would seem most relevant to a fraud by deceit theory.

                                                15
28   Case No. C 05-01524 JF (RS)
     ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
     SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
     MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
     (JFLC1)

1   breach of the exclusivity provision is evidence of fraud.  Because the Court concludes that the

2   SAA does not contain an exclusivity provision, that theory of fraud fails.  Synapsis argues that it

3   reasonably relied on misrepresentations by Defendants and that a question of fact exists with

4   regard to such reliance.  Because Synapsis's theory of fraud is not clear from its opposition to the

5   motion, the Court will analyze the claim under both theories.  As discussed below, the Court

6   concludes that Synapsis has failed to identify a triable issue with respect to either theory and will

7   grant Defendants' motion for summary judgment as to the fraud claim.

8                    i.      Fraud by Deceit

9           Under the Restatement (Second) of Torts and California decisions incorporating that

10  standard,

11          [t]he elements of an action for fraud and deceit based on concealment are: (1) the
            defendant must have concealed or suppressed a material fact, (2) the defendant
12          must have been under a duty to disclose the fact to the plaintiff, (3) the defendant
            must have intentionally concealed or suppressed the fact with the intent to defraud
13          the plaintiff, (4) the plaintiff must have been unaware of the fact and would not
            have acted as he did if he had known of the concealed or suppressed fact, and (5)
14          as a result of the concealment or suppression of the fact, the plaintiff must have
            sustained damage.

15

16  *Lovejoy v. AT&T Corp.*, 92 Cal.App.4th 85, 96 (Cal. Ct. App. 2001) (citing *Marketing West, Inc.*

17  *v. Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603, 612-613 (Cal. Ct. App. 1992)).  The conduct on

18  which Synapsis bases its fraud claim is described in Akel's declaration and relates to the decline

19  in Evergreen's sales of Synapsis's products:

20          McAllister and DeMartini continued to make excuses to [him] for the lack of
            business, including bad times in the economy, the "dot.com" firms were going out
21          of business, and the reluctance of business to spend monies on electronic forms.
            They particularly emphasized the September 11 events as a main cause.  During
22          this time, Synapsis business with Evergreen was down more than 60%.

23  Akel Decl. ¶ 53.[11]  Evidence that Defendants attempted to "upgrade" businesses from Synapsis

24

25

26          [11]  Defendants object to another, unquoted sentence of this paragraph.  The Court does not
    consider that sentence in resolving this aspect of the motion and expresses no opinion as to the
27  objection.

                                                    16
28  Case No. C 05-01524 JF (RS)
    ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
    JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
    SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
    MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
    (JFLC1)

1  products and services to products provided by themselves and other vendors, *see e.g.* Synapsis

2  Motion Ex. 57, does support an inference that Defendants may have intended to cause Synapsis

3  to act in such a way that would allow Defendants to gain a competitive advantage over Synapsis.

4  However, Synapsis does not tie any specific misrepresentation or concealed fact to Defendants'

5  obligations under either the SAA or the NDA.  Synapsis argues that Defendants concealed facts

6  material to the exclusivity provision, but the Court has concluded that no such provision existed

7  in the SAA.  Synapsis fails to identify any other duty owed by Evergreen to reveal the

8  information that it alleges that Evergreen concealed.

9                ii.    Promissory Fraud

10      "Promissory fraud is a subspecies of the action for fraud and deceit.  A promise to do

11  something necessarily implies the intention to perform; hence, where a promise is made without

12  such intention, there is an implied misrepresentation of fact that may be actionable fraud." *Lazar*

13  *v. Superior Court*, 909 P.2d 981, 985 (Cal. 1996).  For the reasons discussed previously,

14  Synapsis may not base a promissory fraud claim on the alleged exclusivity clause in the SAA.

15  Synapsis fails to identify any evidence that tends to prove that Defendants promised to hold

16  Synapsis's proprietary and trade secret information in confidence without the intention to do so,

17  or that Defendants intended to breach other clauses of the NDA or the SAA when they entered

18  those agreements.

19          c.    Third Claim:  Trade Libel and Slander

20      Defendants next contend that Synapsis cannot prevail on its trade libel claim because

21  Synapsis cannot identify a defamatory statement made by Defendants that is provably false.

22  Synapsis opposes the motion on the basis that the following statement, made by Evergreen, is an

23  untrue statement of fact and is libelous *per se*:[12]

24          For many years Evergreen has used a third party to provide fulfillment and
        technical support for the following products:

25

26      [12]  In its opposition, Synapsis refers the Court to the arguments it makes in its own motion

27  for partial summary judgment.  The Court has considered those arguments.

28
Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

> • **LaserForms** (printer installed SIMM/DIMM based product)
> • **DocuGuard** (memory chip in a device external to the printer)
> While these products have served the purpose well for a number of years, the technology has now reached the age where it has become dated and no longer adequately serves the needs of our clients.
> **Effective immediately Evergreen will no longer use this third party for support or new projects for existing installations of the products mentioned above.**
> . . .
> As an upgrade path for customers that require greatly expanded functionality, **Evergreen will offer a trade-in consideration of a 50% discount from software and services on the much more advance LaserForms.Deluxe.** This product has [] capabilities not available on the product you are currently using[.]
> . . .
> You may be contacted by this third party firm with offers of discounts in exchange for doing business directly with them. This company has only very limited technical resources and may not be able to give you the support you have come to expect from Evergreen.

Defendants' Motion Ex. H (letter dated Oct. 29, 2004) (emphasis in original); *see* SAC ¶ 79.

"The Restatement Second of Torts, has described the tort of 'trade libel' as '[t]he particular form of injurious falsehood that involves disparagement of quality . . . .' It is there defined as 'the publication of matter disparaging the quality of another's land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary loss to the other through the conduct of a third person in respect to the other's interests in the property.' California has adopted the Restatement formulation." *Leonardini v. Shell Oil Co.*, 216 Cal.App.3d 547, 572 (Cal. Ct. App. 1989) (internal citations omitted). To constitute trade libel, a statement must be false, but need not be malicious except in the sense that it was not privileged. *Id.*[13] "In most cases, whether a statement is fact or opinion is a question of law. To decide

---

[13] Synapsis uses the terms trade libel and defamation without drawing any distinction between them. "[D]espite the fact that what has come to be known as 'trade libel' is similar to defamation in that both involve the imposition of liability for injuries sustained through publication to third parties of a false statement affecting the plaintiff, the two torts are distinct; that is, 'trade libel' is not true libel and is not actionable as defamation." *Polygram Records, Inc. v. Superior Court*, 170 Cal.App.3d 543, 549 (Cal. Ct. App. 1989). However, this difference is immaterial to the instant motion because Synapsis's inability to identify a provably false statement precludes it from bringing either of these claims.

18

whether a statement is fact or opinion, a court must put itself in the place of an average reader and determine the natural and probable effect of the statement, considering both the language and the context." *ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th 993, 1011 (Cal. Ct. App. 2001) (internal citations omitted). "[W]here a statement is ambiguous and capable of being understood by the average reader as being either fact or opinion, categorization of the statement is not a question of law and must be left to the jury's determination." *Hofmann Co. v. E. I. Du Pont De Nemours & Co.*, 202 Cal.App.3d 390, 397-98 (Cal. Ct. App. 1988) (*see also Kahn v. Bower*, 232 Cal.App.3d 1599*, 1608 (Cal. Ct. App. 1991) ("[I]t is a question of law for the court whether a challenged statement is reasonably susceptible of an interpretation which implies a provably false assertion of actual fact.  If that question is answered in the affirmative, the jury may be called upon to determine whether such an interpretation was in fact conveyed.").

The Court concludes that the challenged statements are not reasonably susceptible of an interpretation that implies a provably false assertion of actual fact.  The statement that "the technology has now reached the age where it has become dated and no longer adequately serves the needs of our clients" communicates Evergreen's assessment of the technology and the needs of the clients.  As such, it is an opinion.  The statement that the new product "has [] capabilities not available on the [Synapsis] product you are currently using" well may be a provably false statement of fact, but Synapsis has provided the Court with no evidence in this regard and does not argue that the statement is in fact false.  The statement that Synapsis has "only very limited technical resources" is an expression of Evergreen's opinion of the contrast between itself and Synapsis.  This is particularly apparent when the statement is considered in conjunction with the second clause of the statement, which is that Synapsis "may not be able to give you the support you have come to expect from Evergreen."  Taken as a whole, that sentence expresses an opinion of the likelihood of inadequate support, not a provably false statement of material fact.

Nor do the materials that Synapsis cites in its own motion contain a provably false statement of material fact.   In an email dated December 2, 2004, John Evans wrote:

19

Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

1

2
> Please be careful not to say the product is being sunsetted.  Synapsis will assure
> them it's not the case and will probably accuse us of misrepresenting the truth.
> We need to tell customers that the products [sic] is obsolete and they we have a
> much more reasonably priced alternative that will offer much more functionality.

3

4   Synapsis Motion Ex. 56.  This email tends to prove that Evergreen avoided provably false

5   statements and instead expressed its opinion that the products were obsolete and could be

6   replaced by better Evergreen products.  Synapsis claims that Evergreen stated that Synapsis could

7   not support its own products.  However, the cited email dated December 17, 2004 states that

8   Evergreen, not Synapsis, no longer supports the LaserForms.Plus product.  *See* Synapsis Motion

9   Ex. 57.

10      Because Synapsis has not alleged a provably false statement, the Court will grant

11   Defendants' motion for summary judgment as it pertains to the third claim for trade libel and

12   slander.

13          d.      Fourth Claim:  Conversion

14      Synapsis alleges that Evergreen used software code that it had developed for Oracle "to

15   SNAP Retrofit customers [] under the LaserForms and DocuGuard brand."  SAC ¶ 85.

16   Defendants move for summary judgment on the bases that Synapsis has failed to present any

17   evidence of a conversion and that the conversion claim is preempted by the Copyright Act, 17

18   U.S.C. § 101 *et seq*.

19      The parties dispute the significance of the relevant allegations in the SAC, which read:

20
21
> 83. At all relevant times, SYNAPSIS was the owner of computer software code
> that was incorporated into the Oracle Financials software through an arrangement
> between SYNAPSIS and Oracle. (Oracle is a software developer as defined in the
> agreement between EVERGREEN and SYNAPSIS.) This software code was
> designed and tested by SYNAPSIS with Oracle and enhanced the Oracle
> Financials software for forms and check printing.  SYNAPSIS received an
> economic benefit from this arrangement with Oracle through EVERGREEN
> because this allowed SYNAPSIS to provide transparent services through the
> Oracle Financials software.  Oracle received an economic benefit because it
> helped satisfy customer needs.
> 84. EVERGREEN had no permission to use this software code without
> SYNAPSIS' permission.
> 85. As alleged above, EVERGREEN used this software code with respect to
> SNAP Retrofit customers sold under the LaserForms and DocuGuard brand that

22
23
24
25
26
27
28

20

Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

1

EVERGREEN sold electronic forms and cut sheet preprinted laser forms to that
was covered by the contract between EVERGREEN and SYNAPSIS.  This use
was without the permission of SYNAPSIS.

2

3   SAC ¶¶ 83-85.  The ambiguity in these paragraphs stems from the word "used" in SAC ¶ 85.

4   The Defendants construe it as meaning copying or incorporating in such a way that would bring

5   this claim within the preemptive scope of the Copyright Act.  *See* Defendants' Motion 22-24;

6   Reply 9-11.  Synapsis construes it as meaning that "Evergreen was selling Synapsis property

7   embedded in the Oracle Financials software outside of Synapsis.  They also did not inform

8   Synapsis that they were working on, and eventually succeeded in creating their own DocuGuard

9   (i.e. Laser Forms) solution or the fact that they were having meetings with Oracle to 'sell' Oracle

10   the 2nd part (back end) of the 1st part (front end) solution Oracle and Synapsis worked on

11   together."  Akel Decl. ¶ 4.[14]

12          "Section 301 of the Copyright Act establishes a two-part test for preemption. First, the

13   [work] must come within the subject matter of copyright as defined in Sections 102 and 103 of

14   the Copyright Act.  Second, the rights granted under state law must be equivalent to any of the

15   exclusive rights within the general scope of copyright as specified by Section 106 [of the

16   Copyright Act]."  *Del Madera Prop. v. Rhodes and Gardner Inc.*, 820 F.2d 973, 976 (9th

17   Cir.1997) (overruled on other grounds) (internal citations and quotation marks omitted).

18   Synapsis argues that Defendants could not have copied Synapsis's code, as the code was

19   embedded within Oracle Financials, a fact, it contends, that takes Synapsis's claim outside the

20   preemptive scope of the Copyright Act.  *See* Opposition to Defendants' Motion 24.  However,

21   Synapsis provides no authority for this contention.  Synapsis also provides no reasonable

22   explanation of how the undefined "use" of its property is not equivalent to the copying of its

23   code.  The primary question before the Court is the meaning of Synapsis's pleading.  This

24

25

26          [14]  This declaration is subject to objection by Defendants.  The Court need not resolve this
objection, however, since it will grant the motion with respect to this claim even having
27   considered the declaration.

28

21

Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

1  ambiguity does not create a triable issue of fact.  Instead, because Synapsis has not explained

2  adequately how "use" differs from a copying of code that would fall within the scope of the

3  Copyright Act, the Court concludes that the conversion claim is preempted.

4  **2.    Plaintiff's Motion for Partial Summary Judgment**

5      a.    <u>Motion for Summary Judgment as to the SAC</u>

6          i.    First Claim: Breach of Contract

7              (1)    Alleged Breach of the SAA

8  Synapsis moves for summary judgment on the breach of contract claim on the question of

9  exclusivity that, as discussed above, the Court has resolved against Synapsis.  Synapsis also

10  appears to move for summary judgment on the breach of contract claim as it pertains to

11  Defendants' alleged failure to discuss and resolve differences and to use best efforts to market

12  Synapsis's products, *see* SAC ¶ 61; and Defendants' alleged violation of the license,

13  confidentiality, and commissions provisions of the SAA, *see* SAC ¶ 62, 66.  However, Synapsis

14  has not met is burden of identifying the basis of such a motion and demonstrating the absence of

15  a genuine issue of material fact.  *See Celotex*, 477 U.S. at 322.  Accordingly, the Court will deny

16  all aspects of Synapsis's motion for summary judgment on its claim for breach of the SAA.

17              (2)    Alleged Breach of the NDA

18  As discussed above, the Court will grant Defendants' motion for summary judgment on

19  the breach of contract claim as it pertains to the NDA.  While it is not clear from its moving

20  papers, Synapsis also appears to move for summary judgment on its breach of contract claim as it

21  pertains to the NDA.  To the extent that Synapsis makes such a motion, it will be denied.

22          ii.    Third and Fourth Claims: Trade Libel and Slander, and Conversion

23  As discussed above, the Court will grant Defendants' motion for summary judgment as to

24  the third and fourth claims of the SAC.  Accordingly, the Court will deny Synapsis's motion for

25  summary judgment as to these claims.

26      b.    <u>Motion for Summary Judgment as to the Cross-Complaint</u>

27

28

Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

1      i.      Standing of McAllister and DeMartini

2      Synapsis contends that McAllister and DeMartini do not have standing to bring

3  counterclaims based on the SAA because they were not parties to that agreement.  In opposition,

4  Defendants contend that Synapsis is judicially estopped from making such an argument because

5  it has brought suit against McAllister and DeMartini for breach of contract.  In reply, Synapsis

6  asserts that it has not brought a breach of contract claim against DeMartini and that it asserts a

7  breach of contract claim against McAllister only as to the NDA.  While the SAC is somewhat

8  confusing and does not draw a neat distinction between claims brought for breach of the NDA

9  and the SAA, the Court concludes that Synapsis is correct in stating that it brings a breach of

10  contract claim against McAllister individually only for breach of the NDA.  The claim excludes

11  DeMartini in its header.  *See* SAC 15.  Accordingly, Synapsis is not judicially estopped from

12  asserting that McAllister and DeMartini do not have standing to bring counterclaims based on the

13  SAA.  The Court concludes that this argument is well taken and will grant summary judgment in

14  favor of Synapsis on the counterclaim to the extent that it is brought by McAllister and

15  DeMartini on the basis of an alleged breach of the SAA.  As a corollary to this conclusion,

16  Synapsis may not proceed on its breach of contract claim against McAllister or DeMartini on a

17  theory that is based on the SAA.

18      Synapsis also argues that McAllister and DeMartini lack standing to bring any of their

19  remaining counterclaims.  Having reviewed the counterclaims, the Court concludes that the

20  injuries asserted therein all pertain to Evergreen and not to its owners, McAllister and DeMartini.

21  The third and fourth counterclaims refer solely to damage suffered by Evergreen.  The fifth,

22  sixth, and seventh counterclaims refer to damages to all the Defendants, but those counterclaims

23  focus on the SAA and Evergreen's economic relationships and prospects; they do not identify

24  any personal stake that McAllister and DeMartini had in the challenged transactions.  The Court

25  thus concludes that McAllister and DeMartini lack standing to bring the remaining counterclaims

26

27

28
                                      23
Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

1    and will grant summary judgment in favor of Synapsis as to this part of its motion as well.[15]

2              ii.     First and Second Counterclaims:  Breach of Contract and the Covenant of

3                      Good Faith and Fair Dealing

4         Evergreen claims that Synapsis breached the SAA by failing to give thirty days's notice

5    of termination of the SAA and the opportunity to cure.  Synapsis moves for summary judgment

6    on the first and second counterclaims[16] on the basis that it performed all work for which it was

7    paid, that it followed all contractual procedures for terminating the contract, and that Defendants

8    have provided no evidence of damages.  Synapsis Motion 25.  Akel's testimony that he did not

9    see a written notice of termination, *see* Opposition to Synapsis Motion Ex. B 188:17-24, and the

10   apparent absence of any other evidence of proper termination indicates that there is at least a

11   factual issue as to whether Synapsis terminated the SAA properly.   However, the Court also

12   concludes that Defendants have failed to identify any evidence of damages resulting from

13   Synapsis's alleged breach of contract and the implied covenant of good faith and fair dealing.

14   Defendants do not discuss damages in their opposition, and the Court perceives no evidence

15   thereof in the record.  Accordingly, the Court will grant summary judgment in favor of Synapsis

16   as to the first and second counterclaims.

17             iii.    Counterclaims Three Through Six:  Interference with Economic

18                     Advantage

19        Defendants allege in their third through sixth counterclaims that Synapsis intentionally

20   interfered with their existing contractual relationships, intentionally interfered with prospective

21   economic relationships, negligently interfered with prospective economic relations, and induced

22
23        [15]  Because the Court concludes that McAllister and DeMartini are entitled to summary
     judgment as to all claims against them and that they do not have standing to bring the
24   counterclaims, they no longer will be parties to this litigation.

25        [16]  Synapsis asserts in its motion that the breach of contract claim "is the same thing" as
26   the counterclaim for breach of the implied covenant of good faith and fair dealing.  The Court
     concludes that any differences among the two claims are immaterial given the absence of
27   evidence of damages for any of these claims.

28
     Case No. C 05-01524 JF (RS)
     ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
     SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
     MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
     (JFLC1)

1  breach of contract.  These claims arise from Synapsis's alleged efforts to persuade entities that

2  had a contractual relationship with Evergreen, but not with Synapsis, to breach their agreements

3  with Evergreen.  Synapsis moves for summary judgment on these counterclaims on the bases that

4  (1) the customers at issue belonged to Synapsis; (2) Synapsis had a contractual relationship with

5  the customers; (3) Defendants have not satisfied the elements of the relevant causes of action; (4)

6  the negligence claim fails because Synapsis did not owe Evergreen an independent duty of care;

7  and (5) there is no legal distinction between these claims and those brought by Synapsis that the

8  Court dismissed in an earlier order.  For the reasons discussed below, the Court will deny this

9  aspect of the motion.

10              (1)      Assertion that Customers at Issue Belonged to Synapsis

11      Synapsis does not identify any term within the SAA that would allow the Court to

12  conclude that, as a matter of law, the customers at issue in these claims belonged to Synapsis.

13  The SAA may have been an agreement to sell Synapsis's products, but that does not resolve the

14  issue.  Instead, a triable issue of fact exists as to the identity of these customers and their

15  relationship, if any, with Synapsis.

16              (2)      Assertion of Contractual Relationship with Customers

17      Synapsis contends that it is not a stranger to the contracts at issue here and that it

18  therefore cannot be liable for interference.  However, a triable issue of fact exists as to whether

19  Synapsis contacted customers of Evergreen that had never purchased Synapsis products or

20  otherwise entered a contract with Synapsis.  *See* McAllister Decl. (Vol. II) ¶¶ 14-15, Opposition

21  to Synapsis Motion Ex. J.[17]

22              (3)      Elements of the Causes of Action

23      Synapsis argues that Evergreen cannot meet the elements of an interference cause of

24  action because Synapsis did not know the identity of the Evergreen customers with whom it

25  allegedly interfered.  That is a factual issue for trial.  Nor does *Delepenna v. Toyota Motor Sales*,

26

27      [17]  These paragraphs are quoted below in the discussion of the seventh counterclaim.

28
Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

1    11 Cal. 4th 376 (1995) bar the instant action, because there is a factual issue as to whether

2    Synapsis contacted Evergreen's customers not as a "mere competitor" but in an effort to persuade

3    them to breach their contracts with Evergreen.

4               (4)     Negligence Claim and Duty of Care

5         Synapsis contends that the claim for negligent interference with prospective economic

6    relationships "is not viable because Synapsis did not owe Evergreen an independent duty of

7    care."[18] The relationships at issue are those to which Synapsis was not a party. Synapsis had a

8    duty of care not to interfere with those relationships. *See e.g.* 40 Cal. Jur. 3d Interference with

9    Economic Advantage § 8. A factual issue remains as to whether Synapsis interfered with those

10    relationships, whether by negligence or intentionally.

11               (5)     The Court's Prior Orders

12         Synapsis does not identify the language in the Court's prior orders that it believes governs

13    the disposition of these four counterclaims. On July 13, 2005, the Court stated that "Synapsis

14    appears to allege that McAllister and DeMartini intentionally and negligently interfered with the

15    'existing contractual relationship' between 'Plaintiff and Defendants.'" July 13, 2005 Order 5.

16    The Court explained that "McAllister and DeMartini were Evergreen's corporate agents for

17    purposes of the [SAA] and thus cannot be held liable for interfering with the agreement by

18    inducing its breach." *Id.* at 6. On January 9, 2006, the Court dismissed the claim without leave to

19    amend, finding that Synapsis had not cured this defect. January 9, 2006 Order 9. As discussed

20    above, Evergreen does not allege that Synapsis's agents interfered with the SAA, so these prior

21    orders are not relevant to the Court's analysis.

22             iv.     Seventh Counterclaim:  Unfair Competition

23         Defendants allege that Synapsis engaged in unfair competition by breaching the SAA and

24    its implied covenant of good faith and fair dealing, improperly obtaining and retaining

25    Evergreen's customer information, and improperly seeking to divert business away from

26

27         [18] Defendants do not respond to this specific contention.

28

Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

Evergreen.  Synapsis moves for summary judgment on the basis that Evergreen may seek only

restitution pursuant to this claim and that Evergreen has presented no evidence indicating that

Synapsis benefitted economically from any action that would give rise to restitution.  McAllister

declares:

> 14.  I learned, in or about 2004, that Synapsis had contacted some of Evergreen's customers in an effort to lure them away from Evergreen.  It is my understanding, based on who these customers were, that Evergreen had never sold them Synapsis' products.  As such, they were not Synapsis's customers even under plaintiff's mistaken belief [sic] any customer to whom Evergreen sold a Synapsis product was, *de facto*, a Synapsis customer.

> 15.  It's my understanding and belief, based on my knowledge of Evergreen's sales, that Evergreen lost at least $60,000[19] in business to customers who stopped doing business with Evergreen based [sic] the solicitations they received from Synapsis in or about 2004.

McAllister Decl. (Vol. II) ¶ 15, Opposition to Synapsis Motion Ex. J.  This sworn declaration

creates a triable issue of material fact as to whether Synapsis improperly diverted business away

from Evergreen and as to whether Synapsis benefitted economically from that action.

Accordingly, the Court will deny Synapsis's motion for summary judgment as it pertains to the

seventh counterclaim.  However, because Synapsis's motion is well taken as to the counterclaims

for breach of contract and breach of the implied covenant of good faith and fair dealing,

Evergreen may not base its seventh counterclaim on such alleged breaches.

### IV. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that:

1.      Defendants' motion for summary judgment as to the SAC is GRANTED in part
        and DENIED in part.

2.      Synapsis's motion for summary judgment as to the SAC is DENIED.

3.      Synapsis's motion for summary judgment as to the counterclaims is GRANTED

---

[19]  Synapsis objects to this figure on the basis that it is anecdotal and lacks foundation. The Court will overrule the objection because it concludes that McAllister is well positioned to have personal knowledge of the sales of his company and the effect of the dispute with Synapsis.

Case No. C 05-01524 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
(JFLC1)

in part and DENIED in part.[20]

DATED: March 9, 2007.

_____
JEREMY FOGEL
United States District Judge

---

[20]   The following claims remain for trial:
1.   Synapsis's claims against Defendants:
    a.   Synapsis may proceed against Evergreen on a breach of contract claim premised on the alleged breach of the best efforts, licensing, confidentiality, and commissions clauses contained in the SAA, but not on the basis of a purported exclusivity clause.
    b.   Synapsis may not proceed on any other claim.
2.   Defendants' counterclaims against Synapsis:
    a.   McAllister and DeMartini may not proceed on any of the counterclaims.
    b.   Evergreen may proceed against Synapsis on its third, fourth, fifth, sixth, and seventh counterclaims.

1  This Order has been served upon the following persons:

2  William Shibly Akel           wmakel@counterstrike.com

3  Daniel C. DeCarlo             decarlo@lbbslaw.com, kkim@lbbslaw.com; pink@lbbslaw.com;
                                  creyes@lbbslaw.com
4
   Manuel Albert Martinez        MMartinez@steinlubin.com, msaephan@steinlubin.com
5
   William Karl Mills            mills@pmmlaw.com, mills@pacbell.net
6
   Jonathan S. Pink              pink@lbbslaw.com, creyes@lbbslaw.com
7
   Michael Navid Radparvar       radparvar@lbbslaw.com,
8
   Jeffrey F. Sax                jsax@saxlaw.net
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                        29
28 Case No. C 05-01524 JF (RS)
   ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
   JUDGMENT; (2) DENYING SYNAPSIS'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE
   SECOND AMENDED COMPLAINT; AND (3) GRANTING IN PART AND DENYING IN PART SYNAPSIS'S
   MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE COUNTERCLAIMS
   (JFLC1)